IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

JAMES F. PAULEY, on behalf of himself,
and all others similarly situated,

                Plaintiff,

v.                                              CIVIL ACTION NO. 3:13-31273

HERTZ GLOBAL HOLDINGS,
INC., a Delaware corporation, et al.,

                Defendants.

**MEMORANDUM OPINION AND ORDER**

Pending before the Court is Plaintiff's motion to remand (ECF No. 17). For the reasons explained below, this motion is **GRANTED**. This case is hereby **REMANDED** to the Circuit Court of Wayne County, West Virginia.

**I.    Background**

On November 4, 2013, Plaintiff James F. Pauley filed the instant Complaint in the Circuit Court of Wayne County, West Virginia, on behalf of himself and others similarly situated, against Defendants The Hertz Corporation, doing business as Hertz Rent-A-Car ("Hertz"); Hertz Global Holdings, Inc.; Hertz Investors, Inc.; and Dollar Thrifty Automotive Group, Inc., doing business as Thrifty Car Rental and Dollar Rent A Car. Compl., ECF No. 3-1 at 3-14. The Complaint stems from Defendants' business practices regarding parking citations.

On August 15, 2013, Plaintiff received a parking citation in Atlanta, Georgia, for a parking meter violation while using a car rented from Hertz. *Id.* ¶¶ 3-5. Plaintiff timely paid online the $35.00 fine for this violation, along with a $2.95 online processing fee for his payment

by credit card, on August 23, 2013. *Id.* ¶¶ 9-10. At some point after that payment was made, Plaintiff received a letter from Hertz Processing Services instructing him to pay the fine—which he had already done—and also informing him of a $30.00 "handling fee." *Id.* ¶¶ 12-13. This "handling fee" was to cover administrative tasks undertaken by Hertz to transfer liability for the parking citation from Hertz to Plaintiff, such as sending transfer of liability documents to the municipality that issued the citation. *See id.* ¶¶ 13-15. According to Plaintiff, "it was unclear . . . whether the handing fee would be applicable if the notice of parking violation had already been paid by the time the letter was sent." *Id.* ¶ 13. Because he "[b]eliev[ed] he had fulfilled his legal obligations . . . , Plaintiff simply filed away the letter." *Id.* Plaintiff alleges that the City of Atlanta does not utilize a transfer of liability process, that Hertz did not properly incur any cost for transferring liability for Plaintiff's parking violation, and that Plaintiff's rental agreement with Hertz does not mention handling costs. *Id.* ¶¶ 14-16. Plaintiff brings claims for breach of contract, unjust enrichment, and conversion. Also, Plaintiff defines the putative class as "rental customers throughout the United States who rented vehicles from Defendant Hertz and Defendant [Dollar Thrifty Automotive Group] and after receiving and paying parking citations issued during the rental period were nevertheless charged a handling cost by Defendant Hertz and Defendant [Dollar Thrifty Automotive Group]." *Id.* ¶ 24.

On December 5, 2013, Defendants filed a Notice of Removal, stating that this case should be removed to federal court because the Complaint satisfies the requirements of the Class Action Fairness Act ("CAFA"), and therefore, this Court has original jurisdiction over the Complaint. Under CAFA, a district court has original jurisdiction over a class action if "any member of a class of plaintiffs is a citizen of a State different from any defendant," if the

putative class consists of 100 or more members, and if "the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs." 28 U.S.C. § 1332(d).

Plaintiff subsequently filed the instant Motion to Remand, arguing that the requirements for CAFA jurisdiction are not satisfied and that, therefore, this Court does not have jurisdiction over the case. Mot. Remand; Mem. Support Mot. Remand, ECF No. 18. Defendants filed a Response, ECF No. 23, and Plaintiff filed a Reply, ECF No. 25. The Motion to Remand is now ripe for resolution.[1]

## II. Legal Standard

In the course of resolving a motion to remand, a court must strictly construe removal statutes in favor of state court jurisdiction. *Palisades Collections LLC v. Shorts*, 552 F.3d 327, 333-34 (4th Cir. 2008). Accordingly, "if federal jurisdiction is doubtful, a remand to state court is necessary." *Id.* at 334 (internal quotation marks omitted). It is well-established that the burden of demonstrating federal jurisdiction falls on the party seeking removal. *Strawn v. AT&T Mobility LLC*, 530 F.3d 293, 296-98 (4th Cir. 2008). The enactment of CAFA has not changed this traditional rule. *Id.* at 297-98. When jurisdiction is challenged, the removing party must prove jurisdiction by a preponderance of the evidence. *See Sayre v. Potts*, 32 F. Supp. 2d 881, 885 (S.D. W. Va. 1999); *see also Caufield v. EMC Mortgage Corp.*, 803 F. Supp. 2d 519, 528 (S.D. W. Va. 2011) (using the preponderance of the evidence standard and finding that "[t]he

---

[1] Defendants have filed a Motion to Dismiss, ECF No. 13, which is also ripe for resolution. However, it is necessary to resolve the Motion to Remand before turning to the Motion to Dismiss. *McCoy v. Norfolk S. Ry. Co.*, 858 F. Supp. 2d 639, 642 (S.D. W. Va. 2012) ("[I]t is ordinarily improper to resolve the motions to dismiss before deciding the motion to remand."); *see also Bilmar Ltd. P'ship v. Prima Mktg., LLC*, No. 2:13-cv-14391, 2013 WL 6195722, at *1 (S.D. W. Va. Nov. 27, 2013) (citing *McCoy* in noting that, "[b]efore the court may consider the merits of the motions to dismiss, it must first resolve the jurisdictional question posed by the motion to remand").

mere possibility that the plaintiff and proposed class *could* meet [the amount in controversy requirement] is not enough to give this court jurisdiction").

### III. Discussion

Plaintiff argues that this case must be remanded because Defendants have not proven by a preponderance of the evidence that the amount in controversy exceeds $5,000,000.[2] Defendant argues that the amount in controversy in this case does exceed $5,000,000, pointing to a declaration from Richard P. McEvily, Senior Vice President and Deputy General Counsel of Hertz, which states, "I am informed by [American Traffic Solutions ("ATS")] that ATS business records show that between January 2010 and November 2013, the dollar amount of transfer of liability-related administrative fees collected from Hertz customers in the United States was at least $5.6 million." Supp. Decl. Richard P. McEvily ¶ 5, May 2, 2014, ECF No. 23-1.[3] Defendants also include a declaration from Nikki Woodward, Senior Vice President of Fleet Services for ATS, which states,

> I personally have reviewed ATS's business records reflecting its transfer of liability-related administrative fee charges . . . . ATS business records show that, between January 2010 and November 2013, the dollar amount of transfer of liability-related administrative fees collected from Hertz customers in the United States was at least $5.6 million.

Decl. Nikki Woodward ¶ 4, May 2, 2014, ECF No. 23-2.[4]

---

[2] Plaintiff also makes the cursory assertion that Defendants have not sufficiently established the size of the putative class. *See* Mem. Supp. Mot. Remand 1. Because Plaintiff presents no argument on this point, the Court will not address it.

[3] As explained in Mr. McEvily's declaration, ATS is a company contracted by Hertz to handle administrative tasks related to transfer of liability. Supp. Decl. Richard P. McEvily ¶ 4, May 2, 2014, ECF No. 23-1.

[4] To the extent that Plaintiff suggests that declarations submitted by Defendants cannot be considered because of lack of personal knowledge, the Court rejects such an argument. *Kemper v. Quicken Loans, Inc.*, No. 5:13-CV-91, 2013 WL 5504152, at *4 (N.D. W. Va. Oct. 2, 2013) (affidavits submitted to resolve a removal dispute need not be based upon personal knowledge).

Plaintiff argues that these declarations cannot establish the amount in controversy because the $5.6 million amount included in the declarations is over-inclusive. Specifically, while Plaintiff limited the putative class to "rental customers . . . who . . . after receiving and paying parking citations issued during the rental period were nevertheless charged a handling cost," Compl. ¶ 24, the $5.6 million figure represents the total amount of liability-related administrative fees collected from *all* Hertz customers charged a handling fee—not just those who paid their parking citations before being charged. Defendant counters that the $5.6 million figure is not over-inclusive because, based on the Complaint as a whole, Plaintiff is attacking transfer-of-liability fees at large and not merely the imposition of those fees on individuals who had already paid their parking citations.

In *Krivonyak v. Fifth Third Bank*, the plaintiffs brought a class action lawsuit in connection with the alleged mishandling of home loans, defining the putative class as "[a]ll consumer borrowers in West Virginia whose loans were serviced by Fifth Third anytime after May 4, 1997." No. 2:09-cv-00549, 2009 WL 2392092, at * 1-2, *5 (S.D. W. Va. Aug. 4, 2009) (citing to the complaint) (internal quotation marks omitted). The plaintiffs alleged that the defendants charged multiple late fees for a single late payment, did not credit payments, and improperly returned payment. *Id.* at *5. The defendants removed the case under CAFA, and the plaintiffs subsequently moved to remand. In considering the motion to remand, the court noted that the putative class was defined broadly, but that the complaint "must be read as a whole." *Id.* The result was that "the class only include[d] those borrowers who were charged multiple late fees, were not credited payments, or were returned an alleged partial payment. Any borrower who was not charged any of the challenged fees simply could not be a member of the putative class." *Id*. Because the defendants only provided evidence of the total amount of first mortgages

originated within the operative time frame, the court was not able to determine the class size. *Id.* at \*5 n.1. The court decided that, even assuming the class exceeded 100 members, the defendants nonetheless failed to establish that the amount in controversy exceeded $5,000,000, and the case was accordingly remanded. *Id.* at \*5 n.1, \*7.

*Krivonyak* was cited in *Caufield v. EMC Mortgage Corp.* for its discussion of reading the complaint as a whole when determining whether CAFA jurisdiction has been established. 803 F. Supp. 2d at 525-26. Similar to *Krivonyak*, the class in *Caufield* was broadly defined as all West Virginians who had a loan serviced by the defendant, and the complaint alleged the illegal assessment of multiple late fees, the illegal assessment of attorney's fees and default charges, and false representation, all in violation of the West Virginia Consumer Credit Protection Act ("WVCCPA"). *Id.* at 526. The court found that, "[r]eading the complaint as a whole, the proposed class can only consist of persons in West Virginia whose loans were serviced by EMC in violation of these WVCCPA provisions." *Id.* Therefore, "EMC's assertion that each and every West Virginia citizen whose loan was serviced by EMC is a member of the proposed class is unfounded." *Id.* Because there was no evidence in the record regarding the size of the class, CAFA's class size requirement was not established. *Id.*; *see also Pirillo v. PNC Mortgage Corp.*, No. 1:12CV7, 2012 WL 761607 (N.D. W. Va. Mar. 7, 2012) (in considering removal under CAFA, finding that, although the class was defined broadly, the causes of action alleged in the complaint further limited that class and remanding for lack of evidence that the size of the proposed class was at least 100 members).

Similarly, in *Hedrick v. CitiMortgage, Inc.*, the plaintiff brought a class action lawsuit, arguing that the defendant loan servicer imposed foreclosure-related fees upon her and others although their homes were not foreclosed upon. No. 2:12-cv-00537, 2012 WL 1458086, at \*1

(S.D. W. Va. Apr. 26, 2012). In support of jurisdiction pursuant to CAFA, the defendant calculated the number of first mortgage loans serviced in West Virginia for the specified time period for which delinquency or default-related charges were incurred. *Id.* at *2. The court found that the defendant's calculation of the class size was over-inclusive because "[t]here is no evidence in the record to determine which mortgages incurred default-related charges versus delinquent charges, which are not challenged by [the plaintiff's] complaint." *Id.* Also, the court noted that "[t]here is . . . no evidence in the record to determine which defaultrelated [sic] charges were incurred after a foreclosure." *Id.* The court accordingly granted the plaintiff's motion to remand.

Applying the reasoning of these cases to the instant case, the Court believes that the class in this case is limited to "rental customers throughout the United States who rented vehicles from Defendant Hertz and Defendant [Dollar Thrifty Automotive Group] and after receiving and paying parking citations issued during the rental period were nevertheless charged a handling cost by Defendant Hertz and Defendant [Dollar Thrifty Automotive Group]." Compl. ¶ 24. Though portions of the Complaint could fairly be viewed as a general attack on Defendants' practices regarding transfer-of-liability fees, when reading the Complaint as a whole, the Court believes that the Complaint should *not* be interpreted such that those more general allegations widen the otherwise narrowly-defined class. Rather, the authority cited supports the opposite approach—namely, any "generalized" claims regarding handling costs are narrowed by the limited class defined in the Complaint. In other words, the class of individuals who may recover based on Plaintiff's allegations is explicitly limited to those individuals who incurred handling fees after paying their parking citations.

Defendants point to several cases to support their argument that the amount in controversy is sufficiently established as exceeding $5,000,000. However, those cases are distinguishable from the instant situation. For example, in *Kemper v. Quicken Loans, Inc.*, the court denied the plaintiff's motion to remand where the plaintiff disputed the defendants' calculation of the amount in controversy; in that case, however, the defendants' calculation was not clearly over-inclusive and plaintiff offered no evidence that the calculation was incorrect. No. 5:13-CV-91, 2013 WL 5504152, at *1-5 (N.D. W. Va. Oct. 2, 2013). In contrast, Plaintiff here has pointed to a specific, clear defect in Defendants' declarations. Other cases cited by Defendants are distinguishable as well. *See Strawn*, 530 F.3d at 294, 298 (where "[t]he complaint defined the class as all consumers in West Virginia who purchased cellular telephone service from AT & T and were charged a $2.99 monthly fee for Roadside Assistance service without ever having requested the service or having affirmatively enrolled in the program," rejecting the plaintiffs' argument "*in their papers* that the proposed class includes only 'unwilling' customers and excludes customers who, even though automatically enrolled in the program, chose to retain the service after being charged the $2.99 fee" because that argument "amounts to a post hoc characterization of the pattern and practice that they are challenging in the complaint as illegal, as their characterization is inconsistent with the descriptions they give *in the complaint* of the pattern and practice *and of the class of persons described as victims*" (emphasis added)); *Martin v. State Farm Mut. Auto. Ins. Co.*, No. 3:10-cv-0144, 2010 WL 3259418, at *5 (S.D. W. Va. Aug. 18, 2010) (where it was undisputed that the class size exceeded 100, defendant properly multiplied the amount of damages each plaintiff sought by 100 to determine the low-end of the amount in controversy); *Laws v. Priority Tr. Servs. of N.C., L.L.C.*, No. 3:08-CV-103, 2008 WL

3539512 (W.D.N.C. Aug. 11, 2008) (approving of the defendants' use of sampling to determine the class size and amount in controversy).

Defendants' declarations state that the amount of liability fees collected by Hertz is at least $5.6 million. However, Defendants do not specify the amount of fees collected from customers who were charged those fees after paying the underlying parking citations, and neither do they specify any fees collected by Dollar Thrifty Automotive Group. Because Defendants have not shown by a preponderance of the evidence that the amount in controversy exceeds $5,000,000, the jurisdictional requirements of CAFA are not met. This case is accordingly remanded to the Circuit Court of Wayne County, West Virginia.

### IV.  Conclusion

For the reasons explained above, Plaintiff's Motion to Remand is **GRANTED**. This case is hereby **REMANDED** to the Circuit Court of Wayne County, West Virginia.

The Court **DIRECTS** the Clerk to send a copy of this written Opinion and Order to counsel of record and any unrepresented parties.

ENTER:   May 19, 2014

ROBERT C. CHAMBERS, CHIEF JUDGE